[No. E042006. Fourth Dist., Div. Two. Jan. 31, 2008.]

THOMAS BAKER et al., Plaintiffs and Respondents, v.
OSBORNE DEVELOPMENT CORPORATION, Defendant and Appellant.

886

## COUNSEL

Gemmill Thornton & Baldridge, Bruce M. Thornton, Carlos V. Yguico; Lincoln, Gustafson & Cercos, Teresa M. Beck and Lisa M. Mersereau for Defendant and Appellant.

Lattie Malanga Libertino, Gerald Bennett Malanga, Teresa A. Libertino and Penny J. Manship for Plaintiffs and Respondents.

## OPINION

**HOLLENHORST, Acting P. J.—**

### I. INTRODUCTION

Defendant Osborne Development Corporation (Osborne) appeals from an order denying its motion to compel arbitration in a construction defect action. We find no error, and we affirm.

### II. FACTS AND PROCEDURAL BACKGROUND

Plaintiffs filed a complaint on October 13, 2005,[1] against Osborne, alleging the homes they purchased from Osborne suffered from construction defects in design and workmanship, including, among other things, problems from soil movement; foundation deficiencies; plumbing leaks; stucco, window, and roof problems; finish problems relating to cabinets, floor tiles, and countertops;

---

[1] The complaint has been amended by the addition of various individual plaintiffs, among other things. The amendments are not material to the issue presented in this appeal.

and problems with the framing and electrical, heating, plumbing, and ventilation systems. The complaint alleged causes of action for strict liability, breach of the implied warranty of merchantability, breach of the purchase agreement, negligence, and breach of warranty.

Osborne answered the complaint in March 2006.[2] On July 12, 2006, Osborne filed a motion to compel arbitration as to certain plaintiffs.[3]

In support of the motion, Osborne contended that certain plaintiffs had entered into an enforceable arbitration agreement. Osborne provided evidence that Osborne participated in a new-home warranty program administered by Home Buyers Warranty Corporation (HBW). Under the program, Osborne, as the builder, enrolled new homes by paying HBW an enrollment fee and mailing to HBW a builder application for home enrollment (Builder Application) form signed by the homebuyer and the builder. The Builder Application stated, "By signing below, you acknowledge that you have . . . read the Builder's Copy of the Warranty Booklet, and **CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION** contained therein."

After HBW accepted homes for enrollment in the warranty program, HBW issued warranty booklets to the homeowners. The HBW warranty booklet provided, "Any and all claims, disputes and controversies by or between the Homeowner, the Builder, the Warranty Insurer and/or HBW, or any combination of the foregoing, arising from or related to this Warranty, to the subject Home, to any defect in or to the subject Home or the real property on which the subject Home is situated, or the sale of the subject Home by the Builder, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty of good faith and fair dealing, shall be submitted to arbitration . . . . [¶] This arbitration agreement shall inure to the benefit of, and be enforceable by, the Builder's subcontractors, agents . . . and any other person whom the homeowner contends is responsible for any defect in or to the subject Home or the real property on which the subject Home is situated . . . . [¶] This arbitration agreement shall be deemed to be a self-executing arbitration agreement. Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including without

---

[2] Numerous subcontractors have also been sued, both by plaintiffs and in Osborne's cross-complaint. The subcontractors are not parties to this appeal.

[3] Osborne later amended its motion to apply to additional plaintiffs.

limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator."

Plaintiffs filed an opposition to the motion to compel arbitration. Plaintiffs stated they had purchased their homes based upon purchase and sale agreements which they entered into before construction of their homes. The purchase and sale agreements contained an arbitration provision limited to the deposit of funds in escrow. At or shortly before the close of escrow, plaintiffs were presented with the Builder Application. In addition, plaintiffs received an "Osborne Development Corporation Homeowner's Policy" which contained a limited one-year warranty, but which did not contain an arbitration agreement. A few weeks after moving into their homes, plaintiffs received a copy of a "2-10 Home Buyers Warranty" (Warranty Booklet) which contained the arbitration provisions and which purported to disclaim any and all other warranties provided by the builder. In addition to the provisions governing arbitration set forth above, the Warranty Booklet purported to limit plaintiffs' rights and remedies as follows:

"[T]he Warranty Insurer will not accept, nor will the arbitrator be able to award to you, any claimed structural defect that you have had repaired or replaced. In addition, you will not be reimbursed for any costs or expenses you undertake to investigate a structural defect such as, but not limited to, engineering and attorney's fees.

"All other express or implied warranties, including any oral or written statements or representations made by your Builder or any other person, and any implied warranty of habitability, merchantability or fitness, are hereby disclaimed by your builder and hereby waived by you. In addition, you are waiving the right to seek damages or other legal or equitable remedies from your Builder, his subcontractors, . . . and materialmen, under any other common law or statutory theory of liability, including but not limited to negligence and strict liability. Your only remedy in the event of a defect in or to your Home or in or to the real property on which your Home is situated is the coverage provided to you under this express limited warranty.

"No arbitration proceeding shall involve more than one single-family detached dwelling . . . ."

The Warranty Booklet specifically excluded a variety of legal claims, including claims for "[n]oncompliance with plans and specifications; violations of local or national building codes, ordinances or standards"; and "[a]ny condition which has not resulted in actual physical damage to your Home."

The arbitration agreement purports to be enforceable against the homeowners by nonparties as follows: "the Builder's subcontractors, agents, vendors, suppliers, design professionals, insurers and any other person whom the homeowner contends is responsible for any defect in or to the subject Home or the real property on which the subject Home is situated."

The Warranty Booklet provides the arbitration agreement is to be governed by the rules of Construction Arbitration Services, Inc. (CAS), or some other unnamed arbitration service of HBW's own choosing. Under the CAS rules, CAS is granted the sole discretion to select the arbitrator and to set the locale of the arbitration, and the arbitrator may decide the date, time, and place of all hearings and the scope of discovery.

A number of the individual plaintiffs filed declarations stating they had signed the Builder Application without reading it.[4] Osborne cites one such declaration as "representative." In that declaration, plaintiff Thomas Baker stated, "5. At no time was I ever . . . advised to review a Builder Copy of the Warranty Booklet. At the time I executed the Builder Application for Home Enrollment it was included among numerous other documents which I was signing in the days before the purchase of my home was set to close. I was not advised to review any materials relating to the home warranty or given any information verbally about the HBW 2-10 home warranty. [¶] . . . [¶] 7. A few weeks after moving into my home, I received in the mail some materials from Home Buyers Warranty. These materials included a Warranty Booklet. This was the first time I had ever seen the Warranty Booklet. [¶] 8. At no time prior to learning of the present Motion to Compel Arbitration did I ever know that the Application for Home Warranty was actually intended by HBW 2-10 to be a waiver of my rights against OSBORNE. At no time did I understand that the Application for Home Warranty included a provision to arbitrate any claims I may have in the future against OSBORNE. Had I known that these documents that purported to be a warranty were actually intended to be a waiver of claims against OSBORNE, I would not have signed the Builder Application for Home Enrollment."

Following a hearing, the trial court denied the motion to compel arbitration. The trial court found that it, rather than the arbitrator, would decide if

---

[4] Five of the 17 plaintiffs subject to the motion to compel arbitration did not file declarations.

the arbitration agreement were enforceable. The court explained, "[W]hether a particular arbitration agreement is unconscionable is a 'gateway' issue that a court decides, rather than an arbitrator, unless the arbitration agreement at issue clearly reserves that decision for the arbitrator. The arbitration agreement here does not clearly provide that issues of enforceability are to be decided by the arbitrator. Instead, the agreement is inconsistent on that issue. On the one hand, it provides in relevant part that 'interpretation or the enforceability of this arbitration agreement, including without limitation, its . . . voidability for any cause . . . shall be decided by the arbitrator.' However, that same section of the agreement contains a severability provision in the event that 'any provision of this arbitration agreement shall be determined by the arbitrator or *by any court* to be unenforceable. . . .' Thus, it acknowledges the possibility that enforceability issues will be decided, not by the arbitrator, but rather by the court. In the absence of a clear, consistent, and unambiguous reservation of that issue to the arbitration, it is properly decided by the court." (Capitalization omitted, italics added.)

The trial court next found that the arbitration agreement was both procedurally and substantively unconscionable. The trial court explained, "Here, the procedural unconscionability is shown by the following facts: the arbitration agreement was not included in the terms of any contract between the buyer and the builder. Instead, the clause referring to the arbitration agreement was included in a document that purported to be an application by the builder to obtain a warranty from HBW. To the extent that the application is intended to be, in substance, an agreement between the builder and the buyer, its title is misleading. The buyers were not asked to sign that application at the time of their execution of a purchase and sale agreement with the builder. Instead, the application was not presented to the buyers until a day or so before the scheduled close of escrow. The terms of the arbitration agreement were not contained in the application. Instead, the terms were laid out in documents that had not been presented to the buyers before they signed the application, were not given to them at the time they signed the application, and apparently were not available from the escrow officer or other person supervising the execution of the closing documents. A reasonable buyer would believe that the arbitration agreement to which the application referred would govern any dispute with HBW regarding the terms of the warranty, not disputes between the builder and the buyer. There is no evidence that the arbitration agreement was a negotiable term. To the contrary, by the fact that it was presented long after the purchase and sales agreement was executed and at a time when no representative of the builder was present, and by the fact that the exact same clause was presented to each of the buyers, it appears to be a contract of adhesion, i.e., 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the

subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (Capitalization omitted.)

Finally, the trial court found that the arbitration agreement was substantively unconscionable: "The agreement is also substantively unconscionable because it is not mutual. There is no realistic circumstance in which the builder would be suing the buyer and bringing claims that would be required to be arbitrated under the terms of the agreement." (Capitalization omitted.)

## III. DISCUSSION

### A. *Standard of Review*

On appeal from the denial of a motion to compel arbitration, "we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law. [Citations.]" (*Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 764 [46 Cal.Rptr.3d 314].) Here, the trial court held that the arbitration agreement was unenforceable because it was both ambiguous and unconscionable. The trial court's threshold determination of ambiguity is a question of law subject to de novo review. (*Wagner v. Columbia Pictures Industries, Inc.* (2007) 146 Cal.App.4th 586, 589 [52 Cal.Rptr.3d 898].) Unconscionability is also a question of law for the court, although factual issues may bear on that determination. (Civ. Code, § 1670.5; *Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466, 480 [37 Cal.Rptr.3d 544].) Thus, to the extent the trial court's determination that the arbitration agreement was unconscionable turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under the substantial evidence standard. (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 [7 Cal.Rptr.3d 267].)

### B. *General Principles Governing Arbitration Agreements*

■ Under the Federal Arbitration Act (FAA) (9 U.S.C.S. § 1 et seq.), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C.S. § 2.) The FAA and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) express a strong public policy of enforcing arbitration agreements, including agreements to arbitrate statutory rights. (*Broughton v. Cigna Heathplans* (1999) 21 Cal.4th 1066, 1074–1075 [90 Cal.Rptr.2d 334, 988 P.2d 67].) But the strong policy in favor of enforcing arbitration agreements does not arise until an enforceable agreement is established. (*Mitchell v. American Fair Credit Assn.* (2002) 99 Cal.App.4th

1345, 1355 [122 Cal.Rptr.2d 193].) In determining the enforceability of an arbitration agreement, generally applicable contract defenses, such as fraud, duress, and unconscionability apply. (*Doctor's Associates v. Casarotto* (1996) 517 U.S. 681, 687 [134 L.Ed.2d 902, 116 S.Ct. 1652].) Thus, although the FAA governs the interpretation of arbitration clauses, California law governs whether an arbitration agreement has been formed in the first instance, and whether an arbitration agreement exists is an issue for judicial determination. (*Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 640–641 [223 Cal.Rptr. 838] (*Chan*).)

C. *Court's Power to Determine Enforceability of Arbitration Agreement*

In general, whether a particular dispute is arbitrable is a threshold issue to be decided by the court " 'unless the parties clearly and unmistakably provide otherwise.' " (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 [154 L.Ed.2d 491, 123 S.Ct. 588].) The Supreme Court has stated, "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, [citations], so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about *that* matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate. [Citations.] . . . [A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration. [Citations.] [¶] We agree . . . therefore, that a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943 [131 L.Ed.2d 985, 115 S.Ct. 1920].) Thus, in *Stewart v. Paul, Hastings, Janofsky & Walker, LLP* (S.D.N.Y. 2002) 201 F.Supp.2d 291, the court enforced an agreement to arbitrate the defense of unconscionability of the arbitration agreement, relying on a provision of the arbitration agreement that stated the arbitrator had "exclusive jurisdiction to resolve any dispute as to whether 'all or any part of this Agreement is void or voidable.' " (*Id.* at p. 292.)

Here, the trial court found the arbitration agreement was ambiguous on the issue of whether arbitrability was to be determined by the arbitrator. In our independent judgment (see *Wagner v. Columbia Pictures Industries, Inc.,* *supra*, 146 Cal.App.4th at p. 589), we agree with the trial court that although one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, another provision indicated that the court might find a provision unenforceable. Thus, we conclude

the arbitration agreement did not "clearly and unmistakably" reserve to the arbitrator the issue of whether the arbitration agreement was enforceable. (See *Howsam v. Dean Witter Reynolds, Inc., supra,* 537 U.S. at p. 83.) We next examine whether the agreement was unconscionable.

### D. *Unconscionability*

■ When grounds exist at law or in equity for the revocation of arbitration agreements, courts may decline to enforce them (*Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1170) and because unconscionability is a defense that applies generally to contracts, courts may refuse to enforce an unconscionable arbitration agreement. (*Ibid.*) Under California law, unconscionability has both procedural and substantive elements, and both elements must be present for a court to invalidate a contract on the ground of unconscionability. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 99, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669].)

The procedural element of unconscionability involves oppression and surprise. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 160 [30 Cal.Rptr.3d 76, 113 P.3d 1100].) Oppression arises when the parties have unequal bargaining power, leading to no real negotiation and lack of meaningful choice. (*Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1165 [22 Cal.Rptr.3d 189].) Surprise may arise when challenged terms are hidden in a " ' " 'prolix printed form' drafted by a party in a superior bargaining position." ' " (*Ibid.*)

The substantive element of unconscionability "focuses on the actual terms of the agreement and evaluates whether they create ' " 'overly harsh' " ' or ' " 'one-sided' " results' [citation], that is, whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner. [Citation.] To be substantively unconscionable, a contractual provision must shock the conscience." (*Wayne v. Staples, Inc., supra,* 135 Cal.App.4th at p. 480.)

In concluding that the arbitration agreement was procedurally unconscionable, the trial court found that (1) the arbitration agreement was not included in the terms of any contract between the homebuyers and the builder, but was instead included in a document that purported to be an application by the builder to obtain a warranty from HBW; (2) to the extent the Builder Application was intended to be an agreement between the builder and the homebuyer, its title was misleading; (3) the homebuyers did not sign the Builder Application when they executed their purchase and sale agreements with the builder, but instead, the Builder Application was presented to a homebuyer a day or so before the scheduled close of escrow; (4) the terms of

the arbitration agreement were not set forth in the Builder Application, but were contained in documents that were not presented to the buyers before or when they signed the Builder Application and apparently were not available from the escrow officers; (5) a reasonable buyer would assume the arbitration agreement referred to in the Builder Application would govern any dispute with HBW regarding the terms of the warranty, not to disputes with the builder; and (6) there is no evidence the arbitration agreement was a negotiable term, and it appeared to be a contract of adhesion.

■ Courts have found procedural unconscionability to exist when, as here, an arbitration agreement is " 'hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.' " (*Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1664 [18 Cal.Rptr.2d 563].) Osborne argues vigorously that plaintiffs signed the Builder Application, which referred to the arbitration provisions, and are therefore irrevocably bound by those provisions. However, as the court stated in *Patterson v. ITT Consumer Financial Corp.*, "While failure to read the provision does not excuse compliance with it [citation], it does establish actual surprise the unfairness of which is reinforced by [the defendant's] failure to call the arbitration clause to the attention of [the plaintiffs]." (*Id.* at p. 1666.) Similarly, the circumstances of the transaction here establish actual surprise.

■ "[A]n agreement need not *expressly* provide for arbitration, but may do so in a secondary document which is incorporated by reference . . . ." (*Chan, supra,* 178 Cal.App.3d at p. 639, citing *King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 353, 357 [175 Cal.Rptr. 226] (*King*).) The *Chan* court further stated, " 'As a general rule, a party is bound by the provisions of an agreement which he signs, even though he does not read them and signs unaware of their existence.' [Citation.] Further, '[a] contract may validly include the provisions of a document not physically a part of the basic contract. . . . "It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. [Citations.] *But each case must turn on its facts.* [Citation.] *For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.*" ' [Citations.]" (*Chan, supra,* at p. 641.) Whether a document purportedly incorporated by reference was "readily available" is a question of fact. (*Id.* at pp. 644–645, italics omitted.)

In *King,* the court held that arbitration provisions were incorporated into a contract when one appellant had read the bylaws requiring arbitration when applying for membership in a local real estate board and another appellant

had read his application before signing it, the application required the applicant to abide by all the bylaws, and the applicant was familiar with the arbitration manual, which was readily available to both appellants. (*King, supra,* 121 Cal.App.3d at pp. 353, 357.) Here, the trial court found the arbitration provisions were not readily available to plaintiffs, in that the Warranty Booklet was not provided before or at the time the Builder Application was presented for signature just before the close of escrow. Substantial evidence supports that finding.

■ We conclude all of the trial court's factual findings of surprise and oppression are amply supported by evidence in the record, and the conclusion of procedural unconscionability is amply supported by the case law discussed above.

Substantial evidence and case law also support the trial court's finding and conclusion that the arbitration clause was substantively unconscionable. In *Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081, 1092 [123 Cal.Rptr.2d 288], the court held that judicial reference provisions in a purchase agreement were substantively unconscionable because they were for the defendants' benefit only. Similarly, in *Ingle v. Circuit City Stores, Inc., supra,* 328 F.3d at page 1174, the court held that an arbitration provision in an employment contract was unconscionable "[b]ecause the possibility that Circuit City would initiate an action against one of its employees is so remote, the lucre of the arbitration agreement flows one way: the employee relinquishes rights while the employer generally reaps the benefits of arbitrating its employment disputes." (See also *Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126, 1149–1150 [finding a provision that prohibited arbitration of classwide claims unconscionable because it was "difficult to imagine AT&T bringing a class action against its own customers," and AT&T had "fail[ed] to allege that it has ever or would ever do so"].)

The arbitration agreement at issue in the present case was similarly one-sided—Osborne, as the builder and seller of plaintiffs' homes, would have no conceivable reason to institute legal proceedings against a homeowner after escrow closed, but virtually every claim the homeowners might raise against not only the builder, but also against subcontractors, materialmen, and others in any way involved in the construction of plaintiffs' homes would be subject to arbitration.

We conclude the trial court correctly ruled that the arbitration agreement was both procedurally and substantively unconscionable and therefore unenforceable. (See *Patterson v. ITT Consumer Financial Corp., supra,* 14 Cal.App.4th at p. 1667.)

## IV. DISPOSITION

The order appealed from is affirmed. Costs to plaintiffs.

Richli, J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 2008, S161417. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.