Filed 8/21/24  Inostroza v. Amazon.com CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JUSTIN INOSTROZA et al.<br><br>　　　Plaintiffs and Respondents,<br><br>v.<br><br>AMAZON.COM, INC., et al.<br><br>　　　Defendants and Appellants. | A166726<br><br>(Alameda County Super. Ct. No. RG20062641) |

Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc. (collectively, Amazon) appeal the denial of their motion to compel arbitration in an action brought by online sellers pursuant to the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.). Amazon maintained that plaintiffs agreed to arbitrate any disputes with Amazon relating to their use of Amazon's services when they clicked a checkbox to accept the terms of a hyperlinked business agreement during their online registration to become sellers on Amazon.com. The trial court ruled that the validity of the arbitration agreement would be decided by the court, not an arbitrator, and denied the motion based on Amazon's failure to prove the existence of an agreement to arbitrate. We reverse the denial of the motion to compel arbitration and otherwise affirm.

1

# I. BACKGROUND

Amazon provides an online marketplace for the sale of products through its website, Amazon.com. In November 2020, Justin Inostroza and Mackenzie Grissom (collectively, plaintiffs) — who use this marketplace to sell products under their own names — filed an action against Amazon alleging numerous violations of the Labor Code under PAGA, including that Amazon improperly classified them, and other California sellers they represent by proxy, as independent contractors instead of as employees. Amazon disputes these contentions.

## A. Amazon's Motion to Compel Arbitration and Dismiss Case

On July 29, 2022, Amazon moved to compel arbitration on the ground that plaintiffs agreed to individually arbitrate disputes when they signed up to become sellers on Amazon.com.[1] As evidentiary support for the motion, Amazon submitted a declaration prepared by its employee, Clarice Cohn.

Cohn declared that she has worked for Amazon since 2017 and, at the time of executing the declaration, worked as a litigation paralegal. She stated that "[b]ased on [her] job responsibilities and [her] review of Amazon's business records, as well as [her] years of work in Amazon's Legal Department, [she was] familiar with the process for registering a seller account to sell products on [the] website, including the agreements that

---

[1] In March 2022, Amazon first moved the trial court to compel arbitration or, in the alternative, stay the action pending a decision in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*). The trial court denied the motion under the then-controlling law but stayed the case pending the outcome of *Viking River*. The court expressed, "If *Viking River* holds that the plaintiff must arbitrate the claims on behalf of the [California Labor and Workforce Development Agency] under PAGA, then Amazon may file a renewed motion to compel arbitration." At the court's invitation, this motion followed.

sellers enter into when they complete the registration process." Her declaration was "based on personal knowledge and [her] review of records that Amazon keeps in the ordinary course of business," and she claimed to be "competent to testify" to the matters stated in her declaration.

Cohn asserted that Amazon provides a service called "Selling on Amazon" where people sell products through the website. When registering to sell, all sellers must enter into the Amazon Services Business Solutions Agreement (BSA) governing how they sell products on the website. Amazon maintains records "in the ordinary course of business showing certain information about users' account histories, including when users complete the registration process to sell products on Amazon." Cohn was "personally familiar with these records" and, "[i]n her experience, the electronic systems used by Amazon to maintain such records are reliable and kept in a good state of repair."

Cohn further stated that she was familiar with the registration process in place in 2017 and 2018 when plaintiffs became sellers. Then, as now, sellers were required to accept the terms and conditions of the BSA. New registrants would not be able to complete the sign-up process unless they first checked a box indicating that they have "read and accepted the terms" of the BSA. Cohn's declaration included a screenshot image depicting the registration web page for new sellers as it would have appeared in December 2017 and January 2018.

Cohn described the online sign-up process for new sellers to include a requirement that registrants provide a unique email address, password, and legal name for the account. Next to the checkbox, there is a blue hyperlink comprised of the words *Amazon Services Business Solutions Agreement*. By clicking on that link, users would be taken to a page displaying the full terms

of the BSA which Cohn attached to her declaration as Exhibits A and B. "Exhibit A is a true and correct copy of the BSA in effect on December 31, 2017 when [plaintiff Inostroza] signed up . . . Exhibit B is a true and correct copy of the BSA in effect on January 9, 2018, when [plaintiff Grissom] signed up." The computer user is not required to view the hyperlinked BSA to complete the registration process. Sellers cannot list products for sale on the Amazon marketplace without first accepting the BSA.

On page six of the thirty-three-page BSA is a paragraph entitled "Miscellaneous" that includes the following language in boldface: "Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court . . . There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court . . . and must follow the terms of this Agreement as a court would . . . . Amazon and you each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. If for any reason a claim proceeds in court rather than in arbitration Amazon and you each waive any right to a jury trial." (Some bolding omitted.) Every version of the BSA since plaintiffs signed up as sellers has included identical language related to arbitration and waiver of class, consolidated, or representative actions in bold, regular-sized font. The BSAs do not contain signatures, initials, dates, or other markings that associate them with a particular registrant.

Cohn reviewed account history records that showed that Inostroza "accepted the BSA" on December 31, 2017, and Grissom "accepted the BSA" on January 9, 2018.

**B. Plaintiffs' Opposition and Amazon's Reply**

Each plaintiff submitted a declaration stating they had no prior understanding of the concept of arbitration and that during the sign-up process, they did not see and were never alerted to the existence of an arbitration provision. They claimed, "If there was an arbitration provision, I was deprived of an opportunity to negotiate or understand the terms of the purported agreement or consult with an attorney before continuing with the seller sign-up process." Both also declared they did not electronically sign the BSA or any arbitration agreement or provision. They had reviewed the exhibits attached to Cohn's declaration but did not remember the documents. Grissom added that when she "signed up as a seller, [she recalled] a terms and conditions pop up window that had a lot of terms, it was in a pop-up window that was much smaller than my webpage and difficult to read. I never received a copy of this from Amazon and nor do I have any record of it."

In reply, Amazon argued that plaintiffs acknowledged signing up as sellers and did not dispute that they accepted the BSA. Amazon requested that plaintiffs' claims, including the issue of arbitrability, be ordered to individual arbitration.

**C. Hearing and Trial Court Decision**

The trial court issued a tentative decision denying Amazon's motion to compel arbitration. At a subsequent hearing, the court characterized Cohn's declaration as "rather pro forma" and noted that it "doesn't really show foundation . . . [or] knowledge." The court remarked, "[W]hat you have here is a . . . very weak declaration by an in-house paralegal who says, 'I'm

5

familiar with it and I have personal knowledge of it.'  Having personal knowledge of something you're familiar with, . . . that's really pretty weak foundation for it."  The court announced its intention to confirm the tentative decision.

Amazon then requested a continuance to supplement the record.  The court denied the request.

The trial court issued a written order denying the motion to compel as a result of Amazon's failure to meet its initial burden to show an agreement to arbitrate by attaching a copy of the contract bearing plaintiffs' signatures, and separately because the Cohn declaration lacked personal knowledge and not did not establish, by a preponderance of the evidence, the existence of an agreement.  In response to Amazon's claim that the parties "clearly and unmistakably" delegated to the arbitrator the question whether a valid arbitration agreement exists, the court disagreed and ruled that it had the authority to determine that issue.

## II.  DISCUSSION

### A.  Motion to Compel Arbitration

#### 1.  Applicable Law

When a party to an arbitration agreement refuses to submit to arbitration, the other party may petition the court to compel arbitration and stay court proceedings.  (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218 (*Condee*); Code Civ. Proc., §§ 1281.2, 1290.2.)  California statutes create a summary proceeding for resolving these petitions where the trial court sits as the trier of fact, weighing all declarations and other documentary evidence to reach a determination.  (*Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 590 (*Chambers*).)  "California law governs whether an arbitration agreement has been formed

6

in the first instance, and whether an arbitration agreement exists is an issue for judicial determination." (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 893.)

A motion to compel arbitration triggers a three-step framework that shifts the burden of production between the parties. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).) First, the moving party bears an initial burden of producing prima facie evidence of an agreement to arbitrate. (*Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 754–755 (*Iyere*).) If the moving party meets this burden, step two shifts the burden to the party opposing arbitration to identify a factual dispute as to the agreement's existence. (*Ibid.*) If a dispute is identified, the third and final step returns the burden to the moving party to prove, by a preponderance of the evidence, a valid arbitration agreement between the parties. (*Gamboa, supra,* at p. 165.)

### 2. Standard of Review

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.' " (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*).) De novo review is appropriate where the facts are not in dispute and the trial court has denied a petition to compel based on its determination that there is no agreement to arbitrate. (*Doe v. Massage Envy Franchising, LLC* (2022) 87 Cal.App.5th 23, 31.) To the extent the court's decision is based on disputed facts, we review the trial court's decision for substantial evidence. (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 544 (*Bannister*); *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842 (*Ruiz*).) Where the trial court finds that the moving party failed to carry its burden of proof on a motion to

7

compel, appellate review asks whether the trial court's findings were "erroneous as a matter of law." (*Fabian, supra,* at pp. 1066–1067.)

### 3. Amazon met its initial burden to show an agreement to arbitrate.

In the first step of the burden-shifting framework, the moving party "need only allege the *existence* of an agreement" and present that allegation as set forth in rule 3.1330 of the California Rules of Court (rule 3.1330). (*Condee, supra,* 88 Cal.App.4th at p. 219, italics added.) Rule 3.1330 provides that a motion to compel arbitration "must state . . . the provisions of the written agreement and the paragraph that provides for arbitration." This can be accomplished by stating the provisions verbatim or by attaching a copy of the agreement to the petition to compel arbitration. (*Ibid.*) The rule does not "require the petitioner to introduce the agreement into evidence or provide the court with anything more than a copy or recitation of its terms." (*Condee, supra,* at p. 219.)

Citing *Fabian, supra,* 42 Cal.App.5th at page 1067, for the proposition that "[a] party can meet its initial burden to show an agreement to arbitrate by attaching a copy of the Contract that purportedly bears [the plaintiff's] electronic initials and signature," the trial court concluded that Amazon did not meet its initial burden because it did not "attach a contract with a signature" to its motion. In so ruling, the court incorrectly imposed a requirement that is not applicable at step one of the burden-shifting framework. While cases have found that step one *may* be satisfied by attaching a signed contract to the motion, they do not claim that this is the *only* way to meet the burden. (See, e.g., *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*) [defendants may meet their initial burden by attaching a copy of

8

the arbitration agreement purportedly bearing the opposing party's signature]; *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 765 [initial burden satisfied by quoting pertinent portions of the arbitration clause in the motion to compel and referencing the arbitration clause in the agreement].)  Signatures and initials on an agreement are not required so long as rule 3.1330 is otherwise satisfied.

Here, there is substantial evidence that Amazon met its burden at step one.  The relevant BSAs were attached to an employee's declaration as exhibits and were identified as the arbitration agreements at issue in the motion.  Even though the exhibits did not bear signatures, initials, or other markings connecting them to plaintiffs, they were identified as the BSAs in effect at the time plaintiffs enrolled as sellers.  The declaration explained the actions taken by plaintiffs to create online seller accounts on Amazon's platform.  This process required plaintiffs to click a checkbox to indicate that they "read and accepted the terms and conditions" of the BSAs attached as exhibits.  The process explained by the declaration and the attached BSAs combined to satisfy Amazon's obligation to "allege the *existence* of an agreement" at this step.  (*Condee, supra,* 88 Cal.App.4th at p. 219.)  The trial court erred by concluding that Amazon had not met this initial burden.

> **4.    Plaintiffs did not offer evidence creating a dispute as to their acceptance of the terms of the BSA or arbitration agreement.**

As Amazon met its initial burden of establishing the existence of an agreement, the burden shifted to plaintiffs "to identify a factual dispute as to the agreement's existence . . ." (*Iyere, supra,* 87 Cal.App.5th at p. 755.)  The trial court did not address this step in its written order.  On appeal, plaintiffs contend that their burden was met by declaring they did not see, sign, or

9

recall an arbitration provision. Amazon contends that its evidence was uncontradicted and unimpeached as plaintiffs did not refute its description of the online registration process or their assent to the BSA. We agree that plaintiffs did not sufficiently identify a factual dispute as to their acceptance of the BSA and its arbitration provisions.

At step two, the claimed factual dispute must relate to some aspect of the contract formation process. "[T]o determine whether there is an enforceable arbitration agreement, we apply state law principles related to the formation, revocation and enforcement of contracts." (*Banner Entertainment Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357.) "Mutual intent is determinative of contract formation. . . ." (*Id.* at p. 358.) " 'The parties' outward manifestations must show that the parties all agreed "upon the same thing in the same sense." ' " (*Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 460 (*Sellers*).) Without this proof, there is no mutual assent to contract. (*Ibid.*)

"In the world of paper contracting, the outward manifestation of assent to the *same thing* by both parties is often readily established by the offeree's receipt of the physical contract." (*Sellers, supra,* 73 Cal.App.5th at p. 461.) "By contrast, when transactions occur over the internet, there is no face-to-face contact and the consumer is not typically provided a physical copy of the contractual terms. In that context, and in the absence of actual notice, a manifestation of assent may be inferred from the consumer's actions on the website — including, for example, checking boxes and clicking buttons — but any such action must indicate the parties' assent to the *same thing*, which occurs only when the website puts the consumer on constructive notice of the contractual terms." (*Ibid.*) "Thus, in order to establish mutual assent for the valid formation of an internet contract, a provider must first establish the

10

contractual terms were presented to the consumer in a manner that made it apparent the consumer was assenting to those very terms when checking a box or clicking on a button."[2]  (*Ibid.*)

Here, Amazon's evidence of plaintiffs' assent to the BSA was offered through its employee's declaration.  In it, Cohn described how plaintiffs were required to input a unique email address and password, and then check a box confirming that they had "read and accepted the terms and conditions" of the BSA.  Confirming acceptance of the BSA terms was a required step; new sellers could not complete the sign-up process unless they did so.  During this process, the relevant BSAs were available for plaintiffs' review by clicking a blue hyperlink located just below the words "Seller Agreement," the checkbox, and the statement "I have read and accepted the terms and conditions of the Amazon Services Business Solutions Agreement."  Amazon's internal records showed that Inostroza checked the box indicating his acceptance of the BSA on December 31, 2017, and Grissom checked the box on January 9, 2018.

Amazon contends that its evidence at step two was not disputed by plaintiffs.  We agree.  Against the above explanation of Amazon's online contract formation, plaintiffs' declarations failed to refute the existence of an

---

[2] We avoid characterizing Amazon's online process for sellers to sign up on Amazon.com as either a clickwrap agreement (as Amazon claims) or a sign-in wrap agreement (as plaintiffs suggest).  (See *Sellers, supra,* 73 Cal.App.5th at p. 470 [defining the spectrum of online agreements to include clickwrap and sign-in wrap agreements]; *Keebaugh v. Warner Bros. Ent. Inc.* (9th Cir. 2024) 100 F.4th 1005, 1014 [discussing the conspicuous notice necessary to put a reasonable user on notice that they were agreeing to be bound by terms of service].)  Step two of the burden shifting framework concentrates on the evidence of a factual dispute against the proponent's claimed method of contract formation, an inquiry that has no need for these labels.

agreement.  Plaintiffs acknowledged signing up to become sellers.  They did not deny entering their email addresses and passwords or clicking the checkbox to confirm acceptance of the BSA terms.  Plaintiffs' declarations instead claimed they were never alerted to the existence of an arbitration provision and did not electronically sign the BSA or any arbitration agreement.  After reviewing Exhibit A to Cohn's declaration (the BSA reportedly in effect at the time he signed up), Inostroza asserted that he did not "see anything on arbitration" and did not remember the BSA document.  Grissom similarly reviewed Exhibit B.  She recalled seeing "a terms and conditions pop up window that had a lot of terms, . . . [and] was much smaller than my webpage and difficult to read" when she signed up.  These statements do not raise factual disputes about the BSA's existence or plaintiffs' affirmative assent to its terms.

In *Iyere, supra,* 87 Cal.App.5th 747, a panel of this court found that step two of the burden-shifting framework had not been satisfied where the plaintiffs did not explicitly deny signing arbitration agreements.  (*Id.* at p. 756.)  To satisfy step two, the plaintiffs claimed they did not recall reading or signing the agreements and did not know how their handwritten signatures were placed on the relevant documents.  (*Id.* at p. 756.)  We concluded that such "evidence [did] not create a factual dispute as to whether plaintiffs signed the agreement."  (*Ibid*.)  We remarked: "Although the plaintiffs state they do not recall signing the agreement, there is no conflict between their having signed a document on which their handwritten signature appears and, two years later, being unable to recall doing so.  In the absence of any evidence that their purported signatures were not their

12

own, there was no evidence that plaintiffs did not in fact sign the agreement."[3] (*Ibid.*)

The resemblance between *Iyere* and this case lies in the lack of any denial by plaintiffs that they signed up to become sellers, including clicking the checkbox to confirm their acceptance of the BSA—a manifestation of their assent to the online contract. Like *Iyere*, this absence, and the failure to allege an alternate explanation as to how plaintiffs' accounts could have been created by someone other than them, fails to raise a factual dispute sufficient to shift the burden back to Amazon at step three. (See, e.g., *Tanis v. Southwest Airlines, Co.* (S.D. Cal., Mar. 11, 2019, No. 18-CV-2333-BAS-BGS) 2019 U.S. Dist. LEXIS 38876, at 5*–*6 [plaintiff did not dispute she checked the box and does not state that she cannot recall whether or not she checked the box; had she submitted a declaration denying the fact that she checked the box, this may have created a dispute]; cf. *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1124–1125 (*Trinity*) [plaintiff's express statement that she did not recall agreeing to arbitrate by electronically clicking a "Done" box was part of a sufficient showing of a factual dispute at step two].)

---

[3] In *Iyere*, as now, this court disagreed with *Gamboa, supra,* 72 Cal.App.5th 158, concerning an arbitration opponent's burden at step two. In *Gamboa*, the plaintiff did not recall the arbitration agreement bearing her handwritten signature. (*Id.* at pp. 163, 167.) The *Gamboa* court found her burden satisfied, stating: "[W]e need not decide whether Gamboa challenged the authenticity of her purported signature on the arbitration agreement. It was enough that she challenged the authenticity of the agreement by saying under penalty of perjury that she did not remember it." (*Id.* at p. 168; see also *Ramirez v. Golden Queen Mining Co., LLC* (2024) 102 Cal.App.5th 821, 825 [discussing split in authorities concerning handwritten signatures at step two].)

13

Similarly, plaintiffs' statements that they did not sign or see the BSA does not create a factual dispute. Signatures are not necessary to express an agreement to arbitrate and none were required by Amazon's sign-up procedure. (*Chambers, supra,* 71 Cal.App.5th at p. 591.) Furthermore, because " '[a]n arbitration clause within a contract may be binding on a party even if the party never actually read the clause,' " the failure to see the BSA does not dispute the agreement's existence. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; *Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 872 [a party's failure to read a contract before signing is no defense to the contract's enforcement].) Here, the clicking of the checkbox could only have been understood as signifying what it says: "I have read and accepted the terms and conditions of the Amazon Services Business Solutions Agreement."

The action of clicking the checkbox distinguishes this matter from cases where the party opposing arbitration disputes the authenticity of an electronic signature. (See *Bannister, supra,* 64 Cal.App.5th at p. 545; *Fabian, supra,* 42 Cal.App.5th at p. 1065; *Ruiz, supra,* 282 Cal.App.4th at p. 840; *Espejo, supra,* 246 Cal.App.4th at p. 1054.) Because electronic signatures involve printed text on a signature line, authentication requires proof that "the signature is, in fact, the signature of the person the proponent claims it is." (*Id.* at p. 1061.) In other words, the signature must be "the act of the person." (Civ. Code, § 1633.9.) Unlike handwritten signatures, "an individual cannot confirm or deny the authenticity of an electronic signature by viewing a computer printout of the person's printed name." (*Iyere, supra,* 87 Cal.App.5th at p. 757.) "In such a case, the individual's inability to recall signing electronically may reasonably be regarded as evidence that the person did not do so." (*Ibid.*; see also *Fabian, supra*, at p. 1065 [plaintiff's

14

claim that she did not sign the contract and her electronic signature was placed there without her consent or knowledge shifted burden to defendants].)  Here, a factual dispute could have been identified by denying that plaintiffs clicked the checkbox.  However, no such declaration was provided.

Even though plaintiffs did not dispute clicking the checkbox, this court's inquiry does not end.  The inferred manifestation of plaintiffs' assent accomplished by clicking the box will only form a contract if the action conveys the parties' assent *to the same thing*.  (*Sellers, supra,* 73 Cal.App.5th at p. 461.)  Thus, at the moment plaintiffs clicked the checkbox during sign-up, they must have assented to the identical terms as shown in the exhibits attached to Amazon's employee declaration.  To state a factual dispute and defeat a claim that they assented to the same thing, plaintiffs had the opportunity to aver that the BSAs attached to Amazon's employee declaration were materially different than the BSAs in effect when they signed up.  Again, plaintiffs made no such declarations.  Inostroza did not recall ever seeing the BSA; Grissom saw a "pop up window" filled with terms that were difficult to read.  These representations did not state a factual dispute.

In response to Amazon's characterization of its internet contract as a clickwrap agreement on appeal, plaintiffs argue perceived deficiencies with the sign-up process that they claim undermine a finding that plaintiffs unambiguously assented to the BSA.  Plaintiffs claim that the "language" next to the checkbox does not specify that checking the box is what manifests assent.  They also assert that because the box can be un-checked, it is unclear whether the user manifests assent by checking the box, or by both checking the box and clicking "Next" and signing up for an account.  These arguments are unpersuasive.  The language unambiguously asks users to click a box to

confirm that they read and accepted the terms of the hyperlinked agreement. Without clicking the box to signal this confirmation, users would not have been able to complete the sign-up process. In any event, for purposes of the step two analysis, it was plaintiffs' burden to raise these concerns as factual disputes to the agreement's existence. They did not.

Because neither plaintiff raised a cognizable factual dispute challenging acceptance of the BSA terms, they failed to carry their burden at this second step and the trial court erred by impliedly finding the burden had been met.[4] We therefore reverse the order denying the motion to compel arbitration.[5]

## B. It was not error for the trial court to decide the validity of the arbitration agreement.

Parties may agree that an arbitrator will decide " ' " 'gateway' questions of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." ' " (*Trinity, supra,* 78 Cal.App.5th at p. 1122.) "The usual presumption is that a court, not an

---

[4] Although the trial court did not explicitly indicate that step two was satisfied, the finding is implicit because the trial court went on to conduct the analysis required by step three. We apply the doctrine of implied findings to presume the court made factual findings to support its order. (*Ruiz, supra,* 232 Cal.App.4th at p. 842.) However, as indicated, we find that substantial evidence did not support those determinations.

[5] As we need not address the trial court's analysis under step three which focused on the credibility and personal knowledge of Amazon's employee declarant, we deny plaintiffs' request to take judicial notice of three declarations associated with other cases for comparison against Cohn's declaration. Additionally, these extrinsic sources were not before the trial court and have marginal relevance, if any, to this court's review. (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1306–1307; Evid. Code, § 459.)

16

arbitrator, will decide in the first instance whether a dispute is arbitrable. [Citations.] The parties may agree to delegate authority to the arbitrator to decide arbitrability, but given the contrary presumption, evidence that the parties intended such a delegation must be " ' "clear and unmistakable" ' " before a court will enforce a delegation provision." (*Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1048 (*Gostev*).) "This is a 'heightened standard,' higher than the evidentiary standard applicable to other matters of interpreting an arbitration agreement." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 790 (*Ajamian*).)

In this case, Amazon argued that the BSA delegated arbitrability decisions — including whether the arbitration agreement was valid — to the arbitrator. The trial court disagreed and ruled that the validity of the parties' arbitration agreement was an issue for the court to decide. It reached this conclusion after finding no clear and unmistakable delegation by the parties. The court explained that its ruling resulted because "the agreement does not expressly state that an arbitrator will determine the validity of the agreement . . ." Because the trial court made these determinations based on its interpretation of the arbitration agreement, our review is de novo. (*Trinity, supra,* 78 Cal.App.5th at p. 1120.)

Amazon contends that the trial court erred because the BSA incorporates American Arbitration Association (AAA) Rules that provide arbitrators " 'the power to rule on [their] own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement' " and courts have found incorporation of these rules to constitute clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. (See, e.g., *Brennan v. Opus Bank* (9th Cir. 2015) 796 F.3d 1125, 1130 (*Brennan*); *Brinkley v. Monterey Financial Services, Inc.* (2015) 242

17

Cal.App.4th 314, 354; *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123.)  Amazon thus contends that the validity of the agreement should have been determined at arbitration.  We disagree.

As relevant here, paragraph 19 of the BSA, labelled "Miscellaneous," provides that "Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court . . .  There is no judge or jury in arbitration, and court review of an arbitration award is limited. . .  The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes . . .  Amazon and you each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.  If for any reason a claim proceeds in court rather than in arbitration Amazon and you each waive any right to a jury trial."  (Some bolding omitted.)

*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 604 (*Mondragon*), recently addressed the impact of incorporating AAA arbitration rules by reference.  In surveying appellate cases, the court observed that while — in certain contexts — courts have viewed the incorporation of AAA rules to constitute sufficient evidence of the parties' clear and unmistakable agreement to delegate arbitrability decisions (see, e.g., *Blanton v. Domino's Pizza Franchising LLC* (6th Cir. 2020) 962 F.3d 842, 847 [incorporating AAA Rules provides the requisite 'clear and unmistakable' evidence]; *Brennan*, 796 F.3d at 1130 [incorporation of the AAA rules into an employment agreement between a bank and an executive was a clear and unmistakable delegation]), some California courts have "questioned or rejected" making such findings,

especially when unsophisticated parties are involved. (*Mondragon, supra*, at p. 604; *Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, 302 (*Beco*).)

These cases have found no clear and unmistakable delegation of issues to arbitrators under circumstances similar to those presented here. For example, in *Ajamian, supra*, 203 Cal.App.4th at pages 782–783, the breadth of the agreement calling for "any dispute" to be delegated created an ambiguity that undermined a "clear and unmistakable" finding. There, the court observed: "It is true that one reasonable inference from this language is that the parties, in designating arbitration as the exclusive means for determining '*[a]ny* disputes, differences or controversies' (and precluding court actions and providing a defense to them on this ground) intended that even threshold issues of unconscionability would be decided by the arbitration panel. But another reasonable inference is that all of this language is only intended to bring within the exclusive scope of arbitration all *substantive* disputes, claims or controversies on which a court action might otherwise be brought, while the *enforceability* of the arbitration provision itself remains a matter for determination by a court. Indeed, because that is the usual expectancy of the parties, the absence of any express language pertaining to threshold enforceability questions either reinforces that proposition or at least fails to cure the ambiguity." (*Id.* at p. 783.)

Here, the trial court's decision was similarly grounded in the absence of an express statement in the agreement that an arbitrator would determine the validity of the agreement. (*Ajamian, supra*, 203 Cal.App.4th at p. 787 ["unmistakable evidence test is not met by language requiring arbitration of '[a]ny disputes, differences or controversies arising under' a contract"]; accord, *Gostev, supra,* 88 Cal.App.5th at p. 1048 [no language clearly and

19

unmistakably authorized arbitrator to decide threshold questions of arbitrability].) Amazon's arbitration provision could have explicitly delegated to the arbitrator exclusive authority to resolve questions about the formation or enforceability of the arbitration provision, but it did not.

*Beco, supra*, 86 Cal.App.5th at page 305, held on its facts that "[i]n the employment context . . . incorporation [of AAA rules] by reference does not meet the clear and unmistakable test." In that case, as here, the employer did not attach the AAA rules to the agreement and did not provide the employee with a method locate the rules. (*Id.* at p. 306.) Hence, "[c]oncluding that Beco actually considered and consciously agreed to delegate the issue of arbitrability would be a complete fiction. While such fictions might be permissible in other areas of arbitration law, that is not the case with delegation, which requires meeting a ' " 'heightened standard.' " ' " (*Ibid.*)

*Gostev, supra*, 88 Cal.App.5th 1035, considered the relative positions of the parties. " 'Although incorporation [of AAA arbitration rules] by reference may fairly be deemed a clear and unmistakable delegation where there are sophisticated parties, a different result may be obtained where one party is unsophisticated. For an unsophisticated plaintiff to discover she had agreed to delegate gateway questions of arbitrability, she would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity . . .' " (*Id.* at p. 1051.)

Even if the person "has the wherewithal and diligence to track down those rules, examine them, and focus on the particular rule to which appellants now point, the rule merely states that the arbitrator shall have 'the power' to determine issues of its own jurisdiction . . . This tells the

20

reader almost nothing, since a court *also* has power to decide such issues, and nothing in the AAA rules states that the AAA arbitrator, as opposed to the court, *shall* determine those threshold issues, or has *exclusive* authority to do so . . ." (*Ajamian, supra,* 203 Cal.App.4th at p. 790; *Mondragon, supra,* 101 Cal.App.5th at p. 606 [AAA rules do not state arbitrator has exclusive authority to determine arbitrability issues]; *Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 655.)

We find the above authorities convincing as applied to this case. Here, there is no express delegation clause in the BSA, and the arbitration provisions provide no hint that an election to delegate enforceability of the agreement is contemplated. The BSA incorporates AAA rules by referencing them, but does not attach, quote, or provide a hyperlink to a copy of any relevant rules. To the contrary, the statement that "arbitration will be conducted by the [AAA] under its rules, including the AAA's Supplementary Procedures for Consumer-Related disputes," is inserted between information how to start an arbitration claim and information concerning the payment of arbitration-related fees (which are also governed by the AAA rules), further concealing any notion that the rules involve matters outside of the procedures for filing and conducting an arbitration. Additionally, the appearance of this reference in a section of the BSA entitled "Miscellaneous," falls short of showing that these plaintiffs, who portray themselves as unsophisticated consumers who did not know what arbitration was until this litigation commenced, clearly and unmistakably agreed to delegate the question of the validity of the arbitration agreement away from the court.

The BSA's reference to the AAA rules also does not identify which of the multiple sets of AAA rules applicable to commercial, consumer, or employment matters might apply to sellers on Amazon. Amazon maintains

21

that, regarding delegation, "it does not matter which set of AAA rules applies. Under each set of rules, issues related to the existence, scope or validity of the arbitration agreement have been delegated to an arbitrator." However, this fact is not revealed in the BSA and sellers are not presented with a link to any of the various AAA rules. There is likewise no indication that users can just "pick a set" because they all have the same clause.

We recognize the cases cited on each side of the issue concerning whether the mere reference and incorporation of AAA rules, standing alone, constitutes sufficient clear and unmistakable evidence of an intent to delegate arbitrability. But we conclude that the above California cases describe the better approach to determine whether the clear and unmistakable test has been met.

Amazon asserts that while "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability" (*Oracle Am., Inc. v. Myriad Group A.G.* (9th Cir. 2013) 724 F.3d 1069, 1074), we also note that it remains an open question in the Ninth Circuit. (*Patrick v. Running Warehouse, LLC* (9th Cir. 2024) 93 F.4th 468, 480–481; *Eiess v. USAA Fed. Sav. Bank* (N.D. Cal. 2019) 404 F.Supp.3d 1240, 1252 ["whether the sophistication of the contracting parties should be taken into account in evaluating whether a delegation to an arbitrator is clear and unmistakable is an open one in the Ninth Circuit."]; cf. *Brennan*, 796 F.3d at 1130–1131 [holding that incorporation of AAA rules provides clear and unmistakable evidence that sophisticated contracting parties agreed to arbitrate arbitrability, but did not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts].)

We reject Amazon's argument that federal law should determine the validity of the agreement in this case. While *Brennan,* 796 F.3d at 1129, claimed that federal law governs arbitrability questions in agreements covered by the Federal Arbitration Act (9 U.S.C. § 1 et seq.), we follow the guidance provided by our Supreme Court in *Sandquist v. Lebo Automotive* (2016) 1 Cal.5th 233, 244. There, the high court directed that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (*Ibid.*) This default to state law is appropriate because, in matters of disputed contract interpretation, " 'state law, not federal law, normally governs such matters.' " (*Ibid.*)

Based on the above, we find no error and conclude that the trial court had jurisdiction to decide whether the agreement was valid.

## III. DISPOSITION

The order denying the motion to compel arbitration is reversed. The matter is remanded to the trial court to resolve plaintiffs' remaining challenges to arbitrability. Appellants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (3).)

SMILEY, J.[*]

We concur:

BROWN, P. J.
GOLDMAN, J.

*Inostroza, et al. v. Amazon.Com, Inc., et al. (A166726)*

---

[*] Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.