Filed 3/4/26  Foster v. Liberty Military Housing Holdings CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| DELTHIA WENDY FOSTER, | D085268 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2024-00025697-CU-OE-CTL) |
| LIBERTY MILITARY HOUSING HOLDINGS, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfiel, Judge.  Reversed and remanded with directions.

Littler Mendelson and Michael L. Kibbe, Linde K. Blocher for Defendants and Appellants.

JCL Law Firm and Jean-Claude Lapuyade, Perssia Razma; Zakay Law Group and Shani O. Zakay, Eden Zakay, Jaclyn Joyce for Plaintiff and Respondent.

Plaintiff and respondent Delthia Wendy Foster sued defendants and appellants Liberty Military Housing Holdings, LLC, LMH Service, Inc., and LMH Service Company, LLC (collectively Liberty) for violations of the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), various provisions of the Labor Code and certain wage orders. Thereafter, Liberty unsuccessfully moved to compel arbitration of Foster's individual claims, dismiss her class claims and stay the proceedings based in part on an arbitration agreement contained in Liberty's employee handbook. The trial court found the Federal Arbitration Act (FAA) controlled and that Foster's claims were encompassed by the arbitration agreement. However, it ruled based on the wording of a severability clause that the arbitration agreement's delegation clause was unenforceable because it did not clearly and unmistakably delegate arbitrability issues to the arbitrator, and thus the court proceeded to decide that the arbitration agreement was both procedurally and substantively unconscionable, denying Liberty's motion. The court did not reach the question of whether to sever unconscionable provisions, stating Liberty had not raised the issue. Liberty contends the court prejudicially erred by these rulings.

We hold the court correctly reached the conscionability questions, as the delegation clause in the arbitration agreement at issue is not clear and unmistakable. We uphold its findings of procedural unconscionability and substantive unconscionability of the provision in the arbitration agreement waiving claims under the Private Attorneys General Act (PAGA; Lab. Code, § 2698 et seq.) Though that waiver has no effect on Foster's lawsuit since Foster has represented, and her pleading shows, she has not brought PAGA claims, we further hold that the arbitration agreement's fees and costs

2

provisions are substantively unconscionable.  Because the arbitration agreement has multiple unconscionable provisions and the trial court did not reach the question of severance, we reverse the order denying Liberty's motion to compel arbitration and direct the court to address that question in the first instance, applying the severance principles discussed in *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 516 (*Ramirez*).  In doing so, the court should consider Foster's unconscionability arguments concerning the arbitration agreement's assertedly non-mutual benefits to Liberty and infinite duration.

FACTUAL AND PROCEDURAL BACKGROUND

Liberty provides military housing at locations on or near military installations across the United States.  In May 2022, it hired Foster as a nonexempt employee.  Liberty uses an electronic onboarding system that allows prospective employees to submit applications, create passwords, and review documents to fill out and electronically sign.  Prospective hires have five days to complete the onboarding process; at the time of Foster's hire, the onboarding documents included a document entitled "Employee Handbook Acknowledgement and Arbitration Agreement" (the acknowledgment) and an employee handbook, which contained Liberty's arbitration policy.  On April 22, 2022, Liberty sent Foster an e-mail giving her access to its new hire portal.  Foster received a copy of Liberty's employee handbook as part of her onboarding process and four days later signed the arbitration agreement.

Both the acknowledgment and the employee handbook contain provisions under the bold and underlined heading: **<u>Agreement to Arbitrate</u>**.  The acknowledgement states:  "By signing this receipt of the [acknowledgment], I agree that I have read the arbitration policy and any

3

claim dispute or controversy between myself and my employer, Liberty Military Housing or any of its related affiliates, shall be submitted to and determined exclusively by binding arbitration in accordance with policy as described in the handbook. I understand by agreeing to the binding arbitration provision of the handbook, both the employee and the company give up rights to file lawsuits or other civil proceedings, and rights to proceedings before judge and jury, with respect to the claims and causes of action set forth therein. ***I also understand that the arbitrator will only have authority* to *hear each employee's individual claims and will not have the authority to* (i) *consolidate the claims* of *other employees,* (ii) *fashion a proceeding as a class or collective action, or* (iii) *award relief to a group* or *class of employees in one arbitration proceeding. Neither the company nor I will pursue any claim against the other as a member* or *representative of a class. I also understand, however, that nothing within the binding arbitration provision is intended to prevent me from filing any claims for relief under the National Labor Relations Act with the National Labor Relations Board or any other appropriate administrative agency related to my employment claims*."

The employee handbook emphasizes in bold that it contains a binding arbitration agreement. It repeats portions of its acknowledgement regarding arbitration. The handbook states that Liberty "has a policy requiring arbitration of all claims or causes of action arising in any way from its (and its affiliates') employment relationships and, as a condition of employment, requires all employees to agree to arbitrate disputes." It sets out its arbitration policy in a bullet-point fashion, providing in part:

"• It is understood and agreed that any claims or causes of action

4

between you and Company, or any of its employees or agents, that arise in any way from or relate in any way to your employment or termination from employment with Company, or any of the terms or benefits related to your employment—excluding claims covered by workers' compensation or as otherwise specifically excluded below—will be determined exclusively by final and binding arbitration."

"• This Arbitration Policy covers any dispute regarding the arbitrability of any such controversy or claim."

"• The arbitration will be conducted through the American Arbitration Association in accordance with the terms of this policy and the American Arbitration Association National Rules for the Resolution of Employment Disputes."

"• The invalidity or unenforceability of any provision of this Arbitration Policy will not affect the validity or enforceability of any other provision of this policy. In the event that any provision of this policy is held invalid or unenforceable, it shall be severed by the applicable Court or Arbitrator, and it will not affect or render invalid or unenforceable any other provision of this Arbitration Policy which will remain in full force and effect."

"• If required by law applicable to the dispute, Company will pay the arbitrator's fees. If applicable law imposes no such requirement, the arbitrator's fees will be divided equally between you and Company."

"• Unless contrary to applicable law in a specific matter arising hereunder, upon completion of the arbitration, the losing party will pay all costs that have not been paid by either party, and will reimburse the prevailing party for all costs paid by the prevailing party in association with the arbitration."

"• Upon completion of the arbitration, the arbitrator may, if lawful, apportion the costs and attorneys' fees between you and Company in such manner as the arbitrator deems reasonable and appropriate."

"• It is intended and agreed that this policy is governed by the Federal Arbitration Act, 9 U.S.C. 1, *et seq.* and continues in force and effect subsequent to the parties' employment relationship."

The arbitration policy contains a provision stating it is "intended to broadly cover the entire relationship between you and Company . . . ." Within that paragraph is italicized language reiterating the arbitrator's limits and the class/representative action waiver: *"The arbitrator will only have authority to hear each employee's individual claims and will not have the authority to (i) consolidate the claims of other employees, (ii) fashion a proceeding as a class or collective action, or (iii) award relief to a group class of employees in one arbitration proceeding. Neither Company nor you will pursue any claim against the other as a member or representative of a class. In addition, nothing in this policy is intended to prevent you from filing any claims for relief under the National Labor Relations Act with the National Labor Relations Board or any other appropriate administrative agency related to your employment claims."*

In May 2024, Foster filed a class action complaint against Liberty alleging violations of the UCL, Labor Codes and wage orders related to, among other things, minimum and overtime wages, meal and rest periods, and sick pay. She sought in part civil and statutory penalties for Liberty's failure to comply with labor laws. The pleading does not mention PAGA, the PAGA Labor Code statutes or explicitly ask for PAGA civil penalties.

Liberty answered the complaint then moved to compel arbitration of Foster's individual claims based on the arbitration agreement. It argued the

6

language of the arbitration agreement—"[t]his Arbitration Policy covers any dispute regarding arbitrability of any controversy or claim"—clearly and unmistakably delegated to the arbitrator the issue of arbitrability. It asserted the arbitration agreement also incorporated American Arbitration Association (AAA) rules providing that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," which likewise demonstrated Foster had agreed to delegate to the arbitrator gateway issue determinations such as arbitrability. Liberty argued that given the FAA governed the dispute, and the arbitration agreement included a delegation clause, the court was limited to compelling arbitration.

Additionally, Liberty argued the arbitration agreement was neither procedurally or substantively unconscionable. It maintained the document was not complex, and Foster was given the time and opportunity to review and ask questions about it before signing. It argued that when Foster acknowledged receipt of the employee handbook, she was alerted to the arbitration policy, and thus could not be surprised by it. Liberty argued the arbitration agreement was not substantively unconscionable; according to Liberty, the arbitration agreement satisfied five factors set out in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*), namely it provided for (1) a neutral arbitrator; (2) adequate discovery; (3) relief otherwise available in court such as monetary damages, injunction or reinstatement; (4) a written arbitration award that permitted limited judicial review; and (5) the employer to pay arbitrator's fees and all costs unique to arbitration. It argued the agreement required both it and Foster to arbitrate disputes, and thus applied equally to both parties. Liberty argued the FAA required the court to stay the proceedings pending

7

arbitration. Liberty supported its motion in part with a declaration from its human resources information systems administrator describing the onboarding process for new hires such as Foster.[1]

Foster opposed the motion. She argued the arbitration agreement was unenforceable as both procedurally and substantively unconscionable. As for procedural unconscionability, she asserted it "was presented to [her] on a take-it-or-leave-it basis as a condition of employment, in a clickwrap format, and was buried in a packet of 69 pages of other employment-related documents." She argued Liberty did not explain the agreement's contents or significance to her, and it was "filled with complex legal jargon and contain[ed] provisions that are impossible to understand without legal training." Foster compared the circumstances to those in *OTO, L.L.C. v. Kho*

---

[1] The Liberty representative stated in part: "Prior to working for Liberty, all prospective hires, including [Foster], are required to complete the onboarding process before commencing employment, which requires the individual to review, complete, and sign various onboarding documents, including the Employee Handbook and . . . Arbitration Acknowledgment, both of which contain Liberty's Arbitration Agreement. All prospective hires have approximately [five] days to complete the onboarding process. The individual can access the onboarding portal using any web browser from whatever device, location, and time he or she chooses. The onboarding portal does not impose any deadline to review the documents, which can be reviewed and signed at the prospective hire's leisure. The prospective hire simply must be logged into with their unique username and password to view and complete the documents. [¶] . . . Each of the onboarding documents require the individual to separately review, complete, and electronically sign. The individual must complete the electronically sign [*sic*] before moving on to the next onboarding document. At the time [Foster] was hired, the onboarding documents include [*sic*], among others, [Foster's] 1-9 form, Liberty's Health Benefits forms, and Liberty's Employee Handbook and Arbitration Agreement. Signing the Agreement to Arbitrate is a condition of employment."

8

(2019) 8 Cal.5th 111, in which the court found an unusually high degree of procedural unconscionability.

Foster further argued the arbitration agreement contained provisions that were substantively unconscionable. According to her, "[t]he agreement threaten[ed] to: 1) have the employee pay for half of the arbitrator's fees; 2) pay all of Liberty's costs if Liberty is the prevailing party; 3) give the arbitrator complete discretion to award attorneys' fees as they deem 'reasonable and appropriate'[ ];" and "4) ha[ve] employees waive their unwaivable right to bring a claim under . . . PAGA." She further argued the agreement included "an impermissibly broad scope of claims to be arbitrated." Foster pointed out that the arbitration agreement had a severability clause, but argued it would not serve the interests of justice for the court to sever the multiple unconscionable provisions as it would incentivize employers to create one-sided arbitration agreements to deter employees from challenging them, but in the event of a challenge rely on courts to modify the agreement to include bilateral terms that should have been there in the first place.

Foster finally argued the trial court had the authority to determine enforceability, since the arbitration agreement's severability provision suggested the court could find a provision unconscionable, and the arbitration policy did not expressly contain a provision attempting to delegate the issue of deciding validity to the arbitrator. Rather, she stated the arbitration policy provided that the arbitration would be governed by the American Arbitration Association National Rules for the Resolution of Employment Disputes without providing a copy of those rules or saying where they could be found. She asserted those rules were archived in 2017, and did not contain a delegation clause investing the arbitrator with the power to decide

issues of enforceability or validity.  Foster argued:  "If an employee were instead to determine that AAA 'Employment Arbitration Rules and Mediation Procedures' governed, as [Liberty] contends, the employee would need to locate these rules, review its 36 pages, find the rule that relates to the delegation of issues relating to validity or enforceability, and attempt to determine whether this rule delegates this issue to the arbitrator *exclusively,* or if the court retains its power to decide this issue.  Plainly, this is not a 'clear and unmistakable' delegation of the issue of validity to the arbitrator."

The trial court denied Liberty's motion.[2]  It first found the FAA applied, as Liberty's business involved purchasing and using goods and services, equipment and supplies from vendors across the United States, and communication by Liberty employees with employees and residents in other states.  The court found it undisputed that Foster had assented to arbitration by initialing the acknowledgment, and that her claims were within the arbitration agreement's scope.  It found that document contained a class action waiver, whose applicability and enforceability Foster did not dispute. The court found that while the arbitration agreement contained a delegation clause, it was not clear and unmistakable given the reference to both the court and the arbitrator in the severance clause, which rendered the agreement "confusing and contradictory," similar to the agreements in

---

[2]     In doing so, the trial court found it "undisputed" that "rule 6(a)" of the "AAA[ ] employment ADR rules" stated " '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.' "  But the court also denied both parties' respective requests for judicial notice. Foster asked the court to take judicial notice of the AAA National Rules for the Resolution of Employment Disputes (including mediation and arbitration rules).  Liberty asked the court to take judicial notice of the AAA Employment Arbitration Rules and Mediation procedures effective November 1, 2009.  Neither party addresses the court's evidentiary ruling.

*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554 and *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884. The court agreed with Foster that the arbitration agreement was a procedurally unconscionable contract of adhesion because it was presented on a on a take-it-or-leave-it basis during an electronic onboarding process, between parties with unequal bargaining power and without an explanation of the agreement's import. Relying on *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, it also agreed the arbitration agreement was substantively unconscionable because it waived PAGA representative claims. The court observed that Liberty did not argue the waiver provision could be severed from the agreement.

Liberty filed this appeal.

DISCUSSION

Our review is limited: Foster does not dispute Liberty's position that she entered into a valid and binding arbitration agreement, that it encompasses her claims, and that it is governed by the FAA.[3] At issue is (1) whether the trial court properly determined the arbitration agreement's enforceability; (2) if so, whether it correctly found the agreement is procedurally and/or substantively unconscionable; and (3) whether the court

[3]    Foster's concession that an arbitration agreement exists has import. "When . . . parties do not contest the existence of an arbitration agreement, challenges to the enforceability of arbitration agreements that have clear delegation clauses are to be decided by the arbitrator, not the court. [Citations.] [¶] But when the existence of an agreement to arbitrate between the relevant parties is disputed, the issue must be decided by a court, not an arbitrator. This is because the delegation of ' "gateway" questions of "arbitrability" ' to the arbitrator 'presupposes the existence of an agreement between the parties, which the court necessarily ha[s] to decide before it [can] enforce any such delegation.' " (*Consumer Advocacy Group, Inc. v. Walmart, Inc.* (2025) 112 Cal.App.5th 679, 690-691.)

11

should have severed any unconscionable provisions, including a PAGA waiver, from the arbitration agreement. We proceed to those questions.

## I. *Court's Authority to Determine Arbitrability*

### A. *Legal Principles and Standard of Review*

Under federal and state law, " 'courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about "arbitrability," ' including ' "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." ' " (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 603; see *Lamps Plus, Inc. v. Varela* (2019) 587 U.S. 176, 185 [recognizing presumption].) But " '[p]arties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement. [Citation.] They "can agree to arbitrate almost any dispute—even a dispute over whether the underlying dispute is subject to arbitration." ' [Citation.] A delegation to the arbitrator is enforceable so long as it is clear and unmistakable." (*Consumer Advocacy Group, Inc. v. Walmart, Inc.*, *supra*, 112 Cal.App.5th at p. 690, citing *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 70, fn. 1; see also *Mondragon*, at p. 601.) "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." (*Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 586 U.S. 63, 65.) " ' "The 'clear and unmistakable' test reflects a '*heightened* standard of proof' that reverses the typical presumption in favor of the arbitration of disputes." ' " (*Mondragon*, at p. 603; *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 892 (*Aanderud*).)

Where the relevant facts are undisputed, " 'we review the denial of a motion to compel arbitration de novo. [Citations.] Likewise, we independently review the order if the trial court's denial [of a petition to

12

compel arbitration] rests solely on a question of law.' " (*Arzate v. ACE American Ins. Co.* (2025) 108 Cal.App.5th 1191, 1199.)  The ordinary rules of contract interpretation apply; we thus construe the agreement " 'like other contracts to give effect to the intention of the parties . . . .' " (*Ibid.*)  Here, the trial court did not take extrinsic evidence or resolve disputed facts in denying Liberty's petition; hence we review the questions presented de novo.

B.  *Analysis*

To repeat, Liberty's arbitration policy in the employee handbook states that the policy "covers any dispute regarding the arbitrability of any such controversy or claim."  The arbitration policy further states that "[t]he arbitration will be conducted . . . in accordance with the terms of this policy and the American Arbitration Association National Rules for the Resolution of Employment Disputes."  The policy goes on to provide:  "In the event that any provision of this policy is held invalid or unenforceable, it shall be severed by the applicable Court or Arbitrator, and it will not affect or render invalid or unenforceable any other provision of this Arbitration Policy which will remain in full force and effect."

Liberty characterizes the first two provisions as delegation clauses that "clearly and unmistakably provide[ ] that the arbitrator . . . would decide the gateway issues concerning the scope and enforceability of the Arbitration Agreement, including the question of conscionability."  It argues that because the severance clause refers to "*any* provision" of the arbitration policy, the reference to "the applicable Court" is limited to deciding claims that are excluded from the terms of the arbitration agreement.  Liberty cites primarily to *B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 959 (*B.D.*), as well as *Aanderud, supra,* 13 Cal.App.5th 880, both of which determined

13

that other arguably inconsistent clauses in an arbitration agreement did not render delegation provisions ambiguous.

In *B.D.*, a panel of this court reversed an order denying a motion to compel arbitration, in part on grounds a delegation clause clearly and unmistakably delegated to the arbitrator certain gateway issues. (*B.D.*, *supra*, 76 Cal.App.5th at p. 936.) There, an online license agreement contained a dispute resolution policy having a provision stating: " 'The arbitrator shall determine the scope and enforceability of this arbitration agreement, including whether a [d]ispute is subject to arbitration. The arbitrator has authority to decide all issues of arbitrability . . . .' " (*B.D.*, at p. 955.) The delegation clause stated such issues of arbitrability included " 'where a party raises as a defense to arbitration that the claims in question' " fell within one of three categories of claims that had been eliminated from the scope of arbitration. (*Ibid.*) The arbitration agreement also contained a "class and collective action waiver provision that addressed circumstances in which 'this class or collective action waiver is deemed unenforceable by a court or arbitrator . . . .' " (*Id.* at p. 958, fn. 12.) It further contained "a section titled 'rules of construction' provid[ing] that '[a] court shall construe the agreement to arbitrate and the agreement to waive class or collective actions in any manner that will render them enforceable and give them effect.' " (*Ibid.*, capitalization omitted.) The arbitration agreement stated that the arbitration would be commenced and conducted by JAMS pursuant to its "Comprehensive Arbitration Rules and Procedures," providing a hyperlink and stating the rules were available at the JAMS website. (*Id.* at p. 955.)

After this court decided the parties had entered into a valid arbitration agreement, we addressed the plaintiffs' argument that the agreement was

14

nevertheless unenforceable because it violated a rule (declared in *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945) prohibiting waivers of the statutory right to seek public injunctive relief. (*B.D.*, *supra*, 76 Cal.App.5th at pp. 936, 954.) The defendant argued in response that the arbitration agreement delegated that *McGill* challenge to the arbitrator. (*Id.* at p. 954.)

Relying in part on *Aanderud*, *supra*, 13 Cal.App.5th 880, this court agreed with the defendant. (*B.D.*, *supra*, 76 Cal.App.5th at pp. 954-955, 957.) We pointed out "[t]he dispute resolution policy clearly and unmistakably states in several places that questions regarding enforceability are delegated to the arbitrator. The arbitration provision states that '[t]he arbitrator shall determine the scope and enforceability of this arbitration agreement.' It also states that '[t]he arbitrator has authority to decide all issues of arbitrability.' Finally, the class and collective action waiver provision—which forms the basis of plaintiffs' *McGill* challenge—similarly states that '[a]ny dispute regarding the prohibitions [specified in that provision] shall be resolved by the arbitrator in accordance with this agreement.' " (*Id.* at p. 957, some capitalization omitted.) We held the delegations were "sufficiently clear and unmistakable." (*Ibid.*)

This court held that the arbitration agreement's reference to JAMS rules was further evidence the parties clearly and unmistakably intended to submit issues of arbitrability to the arbitrator. (*B.D.*, *supra*, 76 Cal.App.5th at p. 957, in part citing *Aanderud*, *supra*, 13 Cal.App.5th at p. 893 [reference to JAMS rules providing that " '[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, . . . shall be submitted to and ruled on by the Arbitrator' " who " 'has the authority to determine jurisdiction and arbitrability issues as a preliminary matter' "

15

evidenced the parties' clear and unmistakable intent to submit issues of arbitrability to the arbitrator].)

Finally, following *Aanderud, supra,* 13 Cal.App.5th 880 and distinguishing other cases (*Baker v. Osborne Development Corp*, *supra*, 159 Cal.App.4th 884 and *Najarro v. Superior Court*, *supra*, 70 Cal.App.5th 871), this court rejected the plaintiffs' argument that the dispute resolution policy's reference to a court's interpretation inserted ambiguity into the delegation clause: "Here, the arbitration provision expressly carves out three classes of claims that remain subject to litigation in court. Thus, the fact the dispute resolution policy contemplates that courts may, on occasion, be called upon to construe various provisions of the policy does not undermine the policy's otherwise clear and unmistakable delegation of gateway issues to the arbitrator on claims subject to arbitration." (*B.D.*, *supra*, 76 Cal.App.5th at p. 959, some capitalization omitted.)

The language of the arbitration agreement at issue here is not comparable to that in *B.D.* or *Aanderud*. The language in *B.D.* and *Aanderud* was much more plain and clear than the language here, which does not refer to the arbitrator's authority or jurisdiction, but states only that the "arbitration policy covers any dispute regarding the arbitrability of any such controversy or claim." (Compare *B.D., supra,* 76 Cal.App.5th at p. 955 [" 'The arbitrator shall determine the scope and enforceability of this arbitration agreement, including whether a [d]ispute is subject to arbitration. The arbitrator has authority to decide all issues of arbitrability"]; *Aanderud*, *supra*, 13 Cal.App.5th at p. 892 [parties "agree to arbitrate all disputes, claims and controversies arising out of or relating to . . . the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of [the 'Arbitration of Disputes' section]"]; see also

16

*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560 [delegation clause stating "[t]he arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement" was clear and unmistakable]; *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 242 [clause stating that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement" was an unambiguous, clear and unmistakable delegation of all issues to an arbitrator].)

Additionally, unlike the circumstances in *B.D.* and *Aanderud* where the incorporation of arbitration rules evidenced the parties' clear intent to submit issues of arbitrability to the arbitrator, the mere incorporation by reference here to AAA national rules of dispute resolution itself was not a clear delegation. The trial court found it "undisputed" that the referenced AAA rules contained a provision stating that the arbitrator had the power to rule on his or her own jurisdiction, including objections respecting the arbitration agreement's validity. However, the finding is not supported by the record. Foster did not agree that the referenced AAA rules contained such a provision, and the employee handbook (at least the portion contained in the record) did not append, quote from, or provide a link to the rules. The court declined to take judicial notice of either set of AAA rules attached by the parties to their respective requests.[4] As in *Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, because the arbitration agreement "neither attached the AAA rules nor provided a method for [Foster] to locate and read them before [she] signed the agreement" (*id.* at p. 306), and there is no

_____

4    Even if we were to judicially notice at Foster's request the content of the AAA rules referenced in the arbitration agreement they do not contain the "Rule 6(a)" quoted by the trial court.

17

indication she actually did so (*ibid*), we decline to hold incorporation of the AAA rules reflects clear and unmistakable intent by Foster to delegate arbitrability issues to the arbitrator. (Accord, *Aanderud*, *supra*, 13 Cal.App.5th at p. 893, fn. 2 [summarizing cases in which courts "have held that the mere incorporation of arbitration rules into an arbitration agreement, absent other evidence of the parties' intent, is insufficient to show a clear and unmistakable agreement to have arbitrators decide their own jurisdiction"]; *Mondragon v. Sunrun Inc.*, *supra*, 101 Cal.App.5th at p. 605, fn. 4 [mere reference to a URL of the AAA's homepage (not the rules themselves) and a statement that the defendant would provide a copy of the rules on request was "not enough to delegate to the arbitrator authority to decide arbitrability"]; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 790 ["reference to AAA rules does not give an employee, confronted with an agreement she is asked to sign in order to obtain or keep employment, much of a clue that she is giving up her usual right to have the court decide whether the arbitration provision is enforceable"].)

Thus, while in *B.D.* and *Aanderud* the agreements' references elsewhere to a court did not render the delegation clause ambiguous, here, the agreement's severance clause, which suggests a court has the authority to sever unenforceable provisions of the arbitration policy, in our view injects enough uncertainty and ambiguity to render the delegation clause ineffective to overcome the presumption that the court would decide arbitrability disputes. (Accord, *Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1197-1199 [holding no clear and unmistakable delegation where severance/"poison pill" provision contemplated "a court" may decide enforceability of subsection requiring individual but not class arbitration; citing cases in which a severability clause allowing courts to determine issues rendered delegation

18

clause uncertain]; *Najarro v. Superior Court, supra,* 70 Cal.App.5th at p. 880 ["Courts have held that 'there is no clear and unmistakable delegation to the arbitrator' to decide arbitrability where the contract 'includes a severability clause stating a court of competent jurisdiction may excise an unconscionable provision' "]; *Baker v. Osborne Development Corp., supra,* 159 Cal.App.4th at pp. 891, 893-894 [arbitration agreement permitted severance in the event that " ' "any provision of this arbitration agreement shall be determined by the arbitrator or *by any court* to be unenforceable . . . ." ' "]; Court of Appeal held agreement did not clearly and unmistakably reserve enforceability questions to the arbitrator where "one provision of the . . . agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, [but] another provision indicated that the court might find a provision unenforceable"]; *Parada v. Superior Court, supra,* 176 Cal.App.4th at pp. 1565-1566 [severability provision in arbitration agreement contemplated a " 'trier of fact of competent jurisdiction' " may find a provision unenforceable].)

In sum, the trial court properly proceeded to decide the conscionability questions relevant to arbitrability. We turn to whether the court reached the correct result on those issues.

## II. *Unconscionability*

### A. *Legal Principles*

Federal and California law favor the enforcement of valid arbitration agreements. (*Ramirez, supra,* 16 Cal.5th at p. 492.) "A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, 'save upon such grounds as exist for the revocation of any contract.' [Citation.] Unconscionability provides such grounds." (*Ibid.*)

19

"The 'general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.' [Citations.] Unconscionability has both a procedural and a substantive element." (*Ramirez*, *supra*, 16 Cal.5th at p. 492; see also *Fuentes v. Empire Nissan, Inc.* (2026) ___ Cal.5th ___, ___ [2026 WL 265574, at p. *3].) Both elements must be present to render a term unconscionable, but they need not be present to the same degree; " 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Ramirez*, at p. 493; see *Fuentes*, at p. *3.)

Courts should consider substantive unconscionability only if the party opposing arbitration first establishes procedural unconscionability. (*Ramirez*, *supra*, 16 Cal.5th at p. 494.) "Procedural unconscionability 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' [Citation.] This element is generally established by showing the agreement is a contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] Adhesion contracts are subject to scrutiny because they are 'not the result of freedom or equality of bargaining.' [Citation.] However, they remain valid and enforceable unless the resisting party can also show that one or more of the contract's terms is substantively unconscionable or otherwise invalid." (*Id.* at pp. 492-493.)

Procedural unconscionability has degrees (*Ramirez*, *supra*, 16 Cal.5th at p. 493): " ' "At one end of the spectrum are contracts that have been freely

negotiated by roughly equal parties, in which there is no procedural unconscionability . . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.' [Citation.]" ' [Citations.] Courts 'must be "particularly attuned" to this danger in the employment setting, where "economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." ' [Citations.] Thus, although adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms." (*Ramirez, supra*, 16 Cal.5th at p. 494.)

"Substantive unconscionability looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms' [citation], focusing on whether the contract will create unfair or one-sided results [citation]. Substantively unconscionable contractual clauses 'reallocate risks in an objectively unreasonable or unexpected manner.' " (*Ramirez, supra*, 16 Cal.5th at p. 493.)

"Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree. [Citation.] Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.] '[W]hether a contract is

21

fair or works unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware.' " (*Ramirez*, *supra*, 16 Cal.5th at p. 493; see also *Fuentes v. Empire Nissan*, *supra*, ___ Cal.5th at p. ___ [2026 WL 265574, at p. *3].)

B. *Procedural Unconscionability*

Liberty contends the contact here is not procedurally unconscionable because it is not a contract of adhesion, Foster had ample time to review it, and she entered into it voluntarily.

"An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' " (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 126.) "Arbitration contracts imposed as a condition of employment are typically adhesive . . . ." (*Ibid.*; *Fuentes v. Empire Nissan*, *supra*, ___ Cal.5th at p. ___ [2026 WL 265574, at p. *4] ["Where, as here, a prospective employer directs an applicant to sign an arbitration agreement as part of the employment application process, the economic pressure on the applicant to sign the agreement is particularly high"].) As indicated above, "adhesion alone generally indicates only a low degree of procedural unconscionability," but in the employment context, "the potential for overreaching . . . warrants close scrutiny of the contract's terms." (*Ramirez*, *supra*, 16 Cal.5th at p. 494; see also *Gurganus v. IGS Solutions LLC* (2025) 115 Cal.App.5th 327, 335-336.)

The contract here, pre-printed forms presented to Foster as a condition of her hiring and requiring her to sign before commencing employment, is adhesive. The Liberty representative explained in support of the petition to compel arbitration that each individual presented with the onboarding

documents had to complete and electronically sign each document before moving onto the next one. She described no ability for individuals to negotiate terms. Thus, the circumstances also had an element of oppression, that is, lack of negotiation and meaningful choice about the standardized language. (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 126.) *OTO* explains that with regard to *"preemployment* arbitration contracts, . . . 'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.' " (*Id.* at p. 127; accord, *Fuentes v. Empire Nissan*, *supra*, ___ Cal.5th at p. ___ [2026 WL 265574, at p. *4.)

While it might not be as significant as the oppression in the case of *OTO*, where the employee was required to accept the arbitration agreement in order to keep his job (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 127), the circumstances of Foster's case present a sufficient modicum of procedural unconscionability to proceed to the question of substantive unconscionability.

C. *Substantive Unconscionability*

"The substantive unconscionability analysis 'examines the fairness of a contract's terms. This analysis "ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " ' overly harsh' " ' [citation], ' "unduly oppressive" ' [citation], ' "so one-sided as to 'shock the conscience' " ' [citation], or 'unfairly one-sided' [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful

23

party.' " ' [Citation.] '[W]here, as here, the written agreement has been prepared entirely by the employer, it is a "well established rule of construction" that any ambiguities must be construed against the drafting employer and in favor of the nondrafting employee. [Citation.] 'Ultimately, the question is whether [the nondrafting employee], through oppression and surprise, was coerced or misled into making an unfair bargain.' " (*Fuentes v. Empire Nissan, Inc., supra*, ___ Cal.5th at p. ___ [2026 WL 265574, at p. \*5]; see *OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at pp. 129-130, 136.) Substantive unconscionability is "sensitive to 'the context of the rights and remedies that otherwise would have been available to the parties' " (*OTO, L.L.C.*, at p. 130) so we examine both the features of dispute resolution adopted and those eliminated. (*Ibid.*)

In the trial court, Foster argued the arbitration agreement was substantively unconscionable based on the assertedly overly broad scope of claims to be arbitrated, the agreement's fees and costs provisions, and the agreement's waiver of non-waivable PAGA claims. The trial court ruled that only the provision waiving PAGA representative claims was substantively

unconscionable, rejecting Foster's remaining claims.[5]  It did not address the issue of severance, pointing out Liberty had not argued unconscionable provisions should be severed.

    1. *Class and Representative Action Waiver*

Liberty contends the trial court erred when it ruled the arbitration agreement substantively unconscionable based on the class/representative action waiver.  It maintains the agreement does not waive PAGA claims that Foster is free to bring in court.  Liberty argues the court erroneously relied on both *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) and *Najarro v. Superior Court, supra,* 70 Cal.App.5th 871, both issued before the United States Supreme Court decided *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), which, according to Liberty, did not find the arbitration agreement at issue unconscionable but

---

[5]    Foster reasserts her substantive unconscionability arguments about the fees and costs provisions, which we address below, as well as the breadth of the arbitration agreement.  She raises new arguments: that the arbitration agreement provides non-mutual benefits to Liberty and also has an infinite duration similar to the arbitration agreement in *Cook v. University of Southern California* (2024) 102 Cal.App.5th 312.  We direct below that the trial court on remand address these points raised for the first time on appeal.  We reject Foster's contention concerning the agreement's breadth, as the challenged provision plainly states that claims, disputes or controversies would be arbitrated "*in accordance with policy as described in the Handbook,*" (italics added) which limits arbitration to "claims or causes of action . . . that arise in any way from or relate in any way to your employment or termination from employment from Company, or any of the terms or benefits related to your employment," excluding workers' compensation claims.  As to breadth, Foster compares the agreement here to that in *Cook*, but the agreement here, viewed as a whole (*National City Police Officers' Association v. City of National City* (2001) 87 Cal.App.4th 1274, 1279 [court must view contract language in light of the instrument as a whole]) is unlike that in *Cook*, which required arbitration of claims "whether or not arising out of Employee's University employment, remuneration or termination . . . ." (*Cook*, 102 Cal.App.5th at p. 317.)

enforced it. Liberty argues that even if we find the arbitration agreement contains a blanket PAGA waiver, it does not render the arbitration agreement unenforceable as such a waiver must be severed from the agreement to allow arbitration of an individual PAGA claim to proceed.[6]

We reject Liberty's argument that the arbitration agreement lacks a PAGA representative action waiver. The agreement contains language stating that it covers disputes "arising under . . . any state, federal or local statute" and also bars the parties from pursuing any claim "as a member or representative of a class." It therefore encompasses PAGA representative claims, despite not explicitly mentioning PAGA. The provision prohibits Foster from asserting representative claims for Labor Code violations under PAGA.

---

[6] This court recently summarized: "*Iskanian*[*, supra,* 59 Cal.4th 348] held that an employee's right to bring a PAGA action was 'unwaivable' and that the rule against PAGA waivers was not preempted by the FAA. [Citation.] *Iskanian* also rejected the employer's argument that a PAGA waiver could be upheld if it only waived the employee's right to bring a PAGA claim on behalf of others while preserving the employee's right to bring such a claim on his own behalf. [Citation.] 'Appellate courts interpreted this aspect of *Iskanian* "as prohibiting splitting PAGA claims into individual and nonindividual components to permit arbitration of the individual claims." ' [Citation.] 'Based on *Iskanian*, California courts refused to enforce predispute agreements to arbitrate PAGA claims.' [Citation.] In *Viking River*[*, supra,* 596 U.S. 639], the United States Supreme Court declared that the FAA preempted '*Iskanian*'s rule that PAGA actions cannot be divided into individual and non-individual claims.' " (*Rodriguez v. Packers Sanitation Services LTD., LLC* (2025) 109 Cal.App.5th 69, 74, fn. 2, review granted May 14, 2025, S290182.) *Viking River* stated that the term " 'individual PAGA claim' refer[s] to claims based on code violations suffered by the plaintiff." (*Viking River*, at p. 649; *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1117-1118 (*Adolph*); see also *LaCour v. Marshalls of CA, LLC* (2025) 117 Cal.App.5th 505, 512.)

*Viking River* left intact *Iskanian*'s holding concerning the waiver of representative PAGA claims being " 'contrary to public policy and unenforceable as a matter of state law.' " (*Adolph*, *supra*, 14 Cal.5th at p. 1118, quoting *Iskanian*, *supra*, 59 Cal.4th at p. 384, *Viking River*, *supra*, 596 U.S. at pp. 662-663 & *Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 306 [*Viking River* did not disturb *Iskanian*'s rule that an arbitration agreement purporting to waive an employee's non-individual claims is unenforceable as a matter of state law].)  Thus, such "blanket waivers of PAGA claims are unconscionable" even after *Viking River*.  (*Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 494-495.)

Having said this, Foster maintains before us that she has not sued under PAGA:  "[N]o PAGA claim has been brought here . . . ."  Her pleading, which does not mention PAGA or seek the specialized statutory penalties under PAGA, supports her claim.  Any invalid or unconscionable PAGA waiver thus does not affect her lawsuit.  As we recognized in *Rodriguez v. Packers Sanitation Services Ltd., LLC, supra,* 109 Cal.App.5th 69, review granted, having made this representation, under the doctrine of judicial estoppel Foster "will be precluded from taking a contrary position in the future.  [Citation.]  In addition, our conclusion that her complaint does not assert individual PAGA claims will be law of the case."  (*Id.* at p. 77.)  There are no PAGA claims to compel to arbitration.

2.  *Fees and Costs Provisions*

To repeat, the attorney fees provisions in the arbitration agreement are:

"If required by law applicable to the dispute, Company will pay the arbitrator's fees.  If applicable law imposes no such requirement, the arbitrator's fees will be divided equally between you and Company.

27

"Unless contrary to applicable law in a specific matter arising hereunder, upon completion of the arbitration, the losing party will pay all costs that have not been paid by either party, and will reimburse the prevailing party for all costs paid by the prevailing party in association with the arbitration.

"Upon completion of the arbitration, the arbitrator may, if lawful, apportion the costs and attorneys' fees between you and Company in such manner as the arbitrator deems reasonable and appropriate."

Foster contends these fees and costs provisions are substantively unconscionable, even though they contain qualifying clauses providing that any arbitrator's discretionary decision to apportion costs and attorney fees be "lawful" and costs and/or fees should comply with applicable law. She argues the savings clauses ("If required by law applicable to the dispute" or "Unless contrary to applicable law in a specific matter arising hereunder . . . .") do not remedy the unconscionability of these provisions, in part relying on *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, disapproved on other grounds in *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1248, *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, and two federal district court cases, *Lou v. Ma Laboratories, Inc.* (N.D.Cal. 2013) 2013 WL 2156316 and *Assaad v. American Nat. Ins. Co.* (N.D.Cal. 2010) 2010 WL 5416841.

The contention has merit. In the employment context, a provision in an arbitration agreement that parties " 'equally share [without limitation] the fees and costs of the [a]rbitrator' " (*Jenkins v. Dermatology Management, LLC* (2024) 107 Cal.App.5th 633, 645) is substantively unconscionable. " '[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the

28

employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court.' " (*Jenkins*, at p. 645, quoting *Armendariz*, *supra*, 24 Cal.4th at pp. 110-111; see also *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 115 [arbitration agreement requiring parties to split the cost of the arbitration and to post fees in advance of the hearing was unconscionable, even when employer agrees to modify the term and bear arbitration costs].) "[A]n employer can compel arbitration of a claim only if the arbitration agreement ' " 'does not require employees to pay . . . any arbitrators' fees or expenses as a condition of access to the arbitration forum.' " ' " (*Jenkins*, at p. 645, quoting *Ramirez*, *supra*, 16 Cal.5th at p. 504.)

Further, "an arbitration agreement imposed as a condition of employment cannot require an employee to pay attorney fees to the employer in the arbitration of a statutory claim, unless the arbitrator finds that the action was frivolous, unreasonable, or groundless when brought, or that the employee continued to litigate after it clearly became so." (*Ramirez*, *supra*, 16 Cal.5th at p. 508 [provision unambiguously requiring an award of attorney fees, even if the moving party is a defendant in a Fair Employment and Housing Act [FEHA] action and the arbitrator has made no finding of frivolity, groundlessness, or continued litigation, violated the dictates of FEHA and *Armendariz*, *supra*, 24 Cal.4th 83].) " '[T]he risk that a claimant may bear substantial costs of arbitration . . . may discourage an employee from exercising the constitutional right of due process.' [Citation.] 'The mere inclusion of the costs provision in the arbitration agreement produces an unacceptable chilling effect . . . .' " (*Jenkins v. Dermatology Management, LLC*, *supra*, 107 Cal.App.5th at p. 645.)

The agreement's fees and costs provisions recited above are substantively unconscionable because "at the time of execution, they created the risk that the employee would be required to pay costs prohibited by [California Supreme Court case law]"—namely, arbitration forum costs, or expenses the employee would not be required to bear if the employee brought the action in court. (*McManus v. CIBC World Markets Corp.*, *supra*, 109 Cal.App.4th at p. 102, in part citing *Armendariz, supra*, 24 Cal.4th at pp. 107-115.)

We disagree that the inclusion of the ambiguous qualifying language, i.e., "[u]nless contrary to applicable law," saves these provisions from unconscionability. (See *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 955 [in the context of an employee noncompete agreement, "[t]he phrase 'except as otherwise prohibited by law' is vague and essentially informs the employee of nothing"].) Neither the trial court nor Liberty pointed to authority holding that similar "savings" language can remedy an otherwise unconscionable provision. To the contrary, courts have held such clauses are "not . . . clearly articulated guideline[s] that would inform the employee of the extent of her responsibility to pay fees." (*Lou v. Ma Laboratories, Inc.* (N.D.Cal., May 17, 2013, No. C 12-05409 WHA) 2013 WL 2156316, at p. *5 [addressing clause, "to the extent permitted by law and public policy," in a fee-shifting provision, which "did not save the agreement, but exacerbated the problem"].) With respect to the inclusion of such clauses, we agree with the observations of the federal district court in *Assaad v. American Nat. Ins. Co.* (N.D.Cal., Dec. 23, 2010, No. C 10-03712) 2010 WL 5416841, at p. *6: "First, an employee could reasonably read this provision and conclude that he or she would be on the hook for substantial forum costs in the event the employer prevailed. This conclusion might well deter an action and chill the

exercise of statutory rights.  Leaving it to the employee to ferret out the state of the law does not equate with 'clearly articulated guidelines.'  And it does seem to say that a losing employee can be on the hook for the arbitrator's fees.  Second, if the arbitrator did award costs against an employee in accordance with the provision, the burden would then be on the employee to challenge such an award in court, and incur further expenses that way, i.e., doubling down."  (Some italics omitted.)[7]

## III.  *Severance*

We turn to the question of severance.  Liberty argues that under *Viking River*, *supra*, 596 U.S. 639 any unconscionable provision must be severed and individual arbitration should be compelled.  Foster responds that the unconscionable arbitration agreement cannot be remedied by severance where the illegality "permeates" the contract and the interests of justice would not be served by severance.  She further maintains *Viking River* is inapposite: Foster argues it held only that where a PAGA claim is brought and the arbitration agreement contains specific language permitting severance of the claim's "individual" component, the individual component can be compelled to arbitration.  Further, she points out the arbitration agreement at issue does not contain the specific language seen in the *Viking River* agreement: that the valid portion of the PAGA waiver should be enforced.

---

[7]  " 'Although not binding, unpublished federal district court cases are citable as persuasive authority.' " (*Epochal Enterprises, Inc. v. LF Encinitas Properties, LLC* (2024) 99 Cal.App.5th 44, 62, fn. 7, quoting *Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 576, fn. 8; see also *Walker v. Apple, Inc.* (2016) 4 Cal.App.5th 1098, 1108, fn. 3 [" 'Although not binding precedent on our court, we may consider relevant, unpublished federal district court opinions as persuasive' "].)

The California Supreme Court in *Ramirez* held that the test for severability of unconscionable arbitration clauses is qualitative and accounts for several factors. (*Ramirez*, *supra*, 16 Cal.5th at p. 516.) The trial court should first "ask whether 'the central purpose of the contract is tainted with illegality.' [Citation.] If so, the contract cannot be cured, and the court should refuse to enforce it." (*Ramirez*, at p. 516.) If the central purpose is not tainted, the court should ask "whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or [if] reformation by augmentation is necessary." (*Ibid*.) Finally, "[e]ven if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions." (*Ibid*.) *Ramirez* held "courts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; *and* enforcing the balance of the contract would be in the interests of justice." (*Ramirez*, *supra*, 16 Cal.5th at p. 517.)

Where unconscionability is found, "[t]he 'strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement.' " (*Ramirez*, *supra*, 16 Cal.5th at p. 513; *Wise v. Tesla Motors, Inc.*, *supra*, 117 Cal.App.5th at p. 338; *Alberto v. Cambrian Homecare, supra*, 91 Cal.App.5th at p. 495.) The law permits the trial court to refuse to enforce an unconscionable provision in a contract, enforce the remainder without the unconscionable clause, or limit the offending clause's application. (Civ. Code, § 1670.5, subd. (a); *Ramirez*, at p. 513; *Wise v. Tesla Motors, Inc.*, at p. 338.)

Here, the court declined to consider at all whether to sever the unconscionable PAGA waiver provision, stating Liberty had not sought severance. Liberty had only for the first time requested severance in its reply

to Foster's arguments below, so Foster had no ability to respond to them in the trial court.

The foregoing principles give the court "discretion not to sever, and to thus refuse to enforce the entire agreement, ' "only when an agreement is 'permeated' by unconscionability." ' " (*Wise v. Tesla Motors, Inc.*, *supra*, 117 Cal.App.5th at p. 338, quoting *Ramirez*, *supra*, 16 Cal.5th at p. 513.) Further, as stated, *Ramirez* permits the court to decide whether unconscionable provisions in an arbitration contract not tainted with illegality "*can* be cured purely through severance or restriction of its terms . . . ." (*Ramirez*, *supra*, 16 Cal.5th at p. 516, italics added.) Such options are the "preferred course for provisions that are collateral to the agreement's main purpose." (*Ibid.*)

We have held the arbitration agreement has several unconscionable provisions, and Foster has raised new unconscionability arguments with respect to what she claims is the non-mutual and infinite nature of the agreement. Under the circumstances, the trial court should resolve the question of severance in the first instance, applying the foregoing principles discussed in *Ramirez*. Accordingly, we reverse the order and remand the matter with directions that the court consider Foster's unconscionability arguments as well as the parties' arguments on severance and decide whether and how the unconscionability can be cured by that remedy.

## DISPOSITION

The order denying Liberty's motion to compel arbitration is reversed and the matter remanded with directions that the trial court consider Foster's arguments with regard to non-mutual and infinite provisions of the arbitration agreement and decide the question of whether the unconscionability in the arbitration agreement can be cured by severance. Foster shall recover costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


RUBIN, J.